IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

IVEN DAFFERN, an individual,        )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )   Case No. CIV-16-1025-C
                                     )
SHERIFF LARRY RHODES, in his         )
official capacity, et al.,           )
                                     )
          Defendants.                )

MEMORANDUM OPINION AND ORDER

Plaintiff filed this case asserting claims based on 42 U.S.C. § 1983, the Eighth Amendment, Art. II § 9 of the Oklahoma Constitution, and negligence rooted in Oklahoma state law. Defendants Mullett and Rhodes each filed Partial Motions to Dismiss (Dkt. Nos. 16, 18), Plaintiff responded, and the Motions are now at issue. Both will be addressed herein.

Plaintiff was arrested for an outstanding misdemeanor warrant on April 10, 2015, and was transported to the Murray County Jail. Plaintiff has diabetes and was carrying medication, including insulin, on his person at the time of his arrest. Plaintiff needed one type of insulin in twice-daily doses and another type in a weekly dose. Detention officers at Murray County recorded Plaintiff's medical history, medical needs, and correctly administered his medications during the ten to twelve hours Plaintiff spent in the Murray County Jail. A Garvin County deputy did not bring Plaintiff's medications when he was transported to the Garvin County Jail, despite Plaintiff's requests to the contrary. Garvin

County detention officers did not administer any medications and a sore developed on Plaintiff's right foot within his first day of confinement at Garvin County.

Plaintiff states he submitted at least three written requests for medical treatment while confined, with one addressed to Defendant Rhodes and one addressed to Defendant Mullett. After five or six days without medication, the sore caused Plaintiff to stop wearing his shoes due to pain and bleeding. The developing ulcer eventually made Plaintiff feverish. Plaintiff claims that on approximately April 20, 2015, he showed Defendant Rhodes and Defendant Mullett his foot and requested medical treatment, specifically insulin. On April 22, 2015, jail staff brought Plaintiff to a doctor who determined Plaintiff had a diabetic ulcer and needed to be transported to a wound care facility. Jail staff released Plaintiff the same day. Doctors were unable to effectively treat the infection and on June 25, 2015, Plaintiff's right leg was amputated just below the knee. Plaintiff claims the amputation was a result of an infection that went untreated for twelve days while he was a pretrial detainee at the Garvin County Jail.

The standard for consideration of motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is set forth in the Supreme Court's decision in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and the subsequent decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). In those cases, the Supreme Court made clear that to survive a motion to dismiss, a complaint must contain enough allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to

dismiss. Id. Thus, the starting point in resolving Defendants' Motions is to examine the factual allegations supporting each claim that Defendants wish the Court to dismiss. The Court will accept all well-pleaded factual allegations in the Complaint as true and construe them in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). However, conclusory allegations need not be accepted as true. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011).

The Court must note the parties are not clear in the claims and arguments about which theories of law they rely upon. The Eighth Amendment does not directly protect pretrial detainees because its scope is limited to "cruel and unusual punishment," and punishment can only occur after a person has been tried, convicted, and sentenced. See Bell v. Wolfish, 441 U.S. 520, 535, n.16 (1979). The proper avenue for Plaintiff's claims is instead the Fourteenth Amendment's Due Process Clause, which will in turn encompass a pretrial detainee's Eighth Amendment rights, including the right to medical care and to be free from punishment. Therefore, while neither § 1983 nor the Eighth Amendment have been directly implicated by this case, the same reasoning and precedent still applies. See Lopez v. LeMaster, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (stating that plaintiff, a pretrial detainee, was "protected under the Due Process Clause rather than the Eighth Amendment ... [,but i]n determining whether [plaintiff's] rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983" (citations omitted)). Accordingly, any argument by the parties relating to § 1983 or claims brought directly under the Eighth Amendment will be construed as asserting the proper path to the courthouse.

## I - Denial of Medical Care Claim

Plaintiff asserts § 1983 claims against both Defendants in their official and individual capacities, but the only claim currently at issue is against Defendant Rhodes in his official capacity for denial of medical care. Plaintiff alleges Defendant Rhodes denied him medical care in violation of his constitutional rights.

The bulk of the arguments presented addresses whether Defendant Rhodes' actions may be attributed to the municipality based on the policy decision theory. However, this is not the only theory for Plaintiff to properly state a claim for relief. As Plaintiff argues in his Response, this case can be likened to Layton v. Board of County Commissioners of Oklahoma County, 512 F. App'x 861, 871 (10th Cir. 2013) (unpublished). In Layton, the Tenth Circuit stated the jury may properly conclude the decision maker was personally "on notice of constitutional deficiencies in the care of seriously ill detainees, and that his failure to take appropriate measures to remedy these deficiencies constituted deliberate indifference." Id. at 872 (citations omitted).

A plaintiff states a viable claim for denial of medical care if he "allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "'Deliberate indifference' involves both an objective and a subjective component. The objective component is met if the deprivation is 'sufficiently serious.'" Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A medical need is "sufficiently serious" if it "'is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" Id. (citation omitted). "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S at 837). At the motion to dismiss stage, Plaintiff need only state a plausible claim. Twombly, 550 U.S. at 570. The Court finds he has done so and the claim will not be dismissed.

## II - Failure to Train Claim

Plaintiff brings an Eighth Amendment claim against Defendant Rhodes in his official capacity alleging that Defendant Rhodes' failure to create effective policies related to medical care for diabetics directly resulted in Plaintiff's injuries. "[M]unicipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). The Court finds Plaintiff has sufficiently pleaded this claim in order to survive a motion to dismiss.

## III - Oklahoma Constitutional Claims

Plaintiff asserts a claim of unconstitutional denial of medical treatment to a pretrial detainee under Okla. Const. art. II § 9. Plaintiff relies on Bosh v. Cherokee County Building Authority, 2013 OK 9, 305 P.3d 994, arguing Bosh and its progeny have recognized a constitutional cause of action for denial of medical treatment. Bosh however, dealt with the more narrow issue under Article II, § 30 of the Oklahoma Constitution, where the Oklahoma Supreme Court recognized a private right of action for cases of excessive force against a

5

municipality, notwithstanding the provisions of the Oklahoma Governmental Tort Claims Act ("OGTCA") foreclosing such claims. 51 Okla. Stat. §§ 151 et seq.

Both Defendants argue Plaintiff's claims should be dismissed, so far as they are asserted against them in their individual capacities, because Bosh does not extend to individual employees. Plaintiff concedes. Therefore, Plaintiff's third claim asserted against Defendant Rhodes and Defendant Mullett in their individual capacities is dismissed. The issues remaining for the Court's consideration under Plaintiff's claims against Defendant Rhodes in his official capacity are whether Bosh may extend to the denial of medical care claims and whether the Bosh claim is time barred.

The Bosh ruling only spoke to excessive force claims, and in Perry v. City of Norman, 2014 OK 119, ¶ 19, 341 P.3d 689, 693, the Oklahoma Supreme Court declined to extend its ruling beyond the original scope. In contrast, the Oklahoma Court of Civil Appeals noted in dicta that Bosh stands "for the proposition that the [Oklahoma] Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights." GJA v. Oklahoma Dep't of Human Servs., 2015 OK CIV APP 32, ¶ 32, 347 P.3d 310, 316. There has been disagreement among Oklahoma's lower federal and state courts regarding the scope of Bosh's holding. Compare Lawson v. Okmulgee Cnty. Criminal Justice Auth., No. 15-CV-300-FHS, 2016 WL 2864421, at *2 (E.D. Okla. May 13, 2016) (finding no other court that held Bosh "is applicable to claims of deliberate indifference to serious medical needs"); Bruning v. City of Guthrie, Okla., No. CIV-15-0003-HE, 2015 WL 4925995, at *8-9 (W.D. Okla. Aug. 18, 2015); Koch v. Juber, No. CIV-13-0750-HE, 2014 WL 2171753,

6

at *3 (W.D. Okla. May 23, 2014) (holding that Bosh should be narrowly interpreted); and Hedger v. Kramer, No. CIV-13-0654-HE, 2013 WL 5873348, at *3 (W.D. Okla. October 30, 2013); with Halley v. Oklahoma ex rel. Oklahoma State Dep't of Human Servs., 176 F.Supp.3d 1268, 1276 (E.D. Okla. 2016) (declining to dismiss a Bosh claim extending to due process under Article II, § 7 of the Oklahoma Constitution); and White v. City of Tulsa, Okla., 979 F. Supp. 2d 1246, 1249 (N.D. Okla. 2013) (holding that Bosh extends to all search and seizure violations). Due to this uncertainty, the Court will sua sponte decline to exercise supplemental jurisdiction over Plaintiff's Bosh claims pursuant to 28 U.S.C. § 1367(c)(1) (stating "district courts may decline to exercise supplemental jurisdiction over a claim" if it "raises a novel or complex issue of State law"). See, e.g., Petty v. Dep't of Human Servs., No. 16-CV-109-GKF-FHM, 2016 WL 3211965, at *5 (N.D. Okla. June 9, 2016). Plaintiff's Bosh claims are more appropriate for the state courts and, therefore, the claim is dismissed without prejudice. Accordingly, the Court will not address the constitutionality claims raised by Plaintiff.

## IV - Negligence Claims

Plaintiff asserts a negligence claim under OGTCA against both Defendants "employed by and working on behalf of a political subdivision of the State of Oklahoma" or, in the alternative, that they "were not acting within the scope of their employment when their negligence actions occurred." (1st Am. Comp., Dkt. No. 14, p. 13). Plaintiff argues both Defendants owed him a duty of care while he was in their custody and control, which they breached by failing to provide him with medical treatment. However, in his Response,

7

Plaintiff concedes the official capacity argument as to Defendant Rhodes. Through incorporation by reference, Plaintiff also conceded the claim against Defendant Mullett in his official capacity. Accordingly, both claims will be dismissed.

The Court must determine whether Plaintiff's claim against the Defendants individually may proceed. In his Response, Plaintiff appears to intertwine Bosh arguments with the negligence OGTCA claim. (Pl.'s Resp. to Rhodes' Mot. to Dismiss, Dkt. No. 24, p. 23) (stating "[t]o the extent that the county intends to use these facts in the future to argue bad faith as a way to avoid liability under Bosh, Plaintiff Daffern has a viable claim against Sheriff Rhodes, as an individual, as an alternative theory of recovery"). After considering the arguments, the Court will also decline to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(1) because the negligence and denial of medical treatment claims are rooted in the OGTCA and both may contain interrelated Bosh arguments. *Supra* Part III. Accordingly, the claim will be dismissed without prejudice.

Alternatively, the claim must also be dismissed because Plaintiff has failed to state a plausible claim for which he can be granted relief because Plaintiff has not alleged sufficient facts to show the Defendants were acting outside the scope of employment. The Complaint merely makes conclusory statements regarding the scope of employment without a single fact indicating Defendants' wrongful actions. (1st Am. Compl., Dkt. No. 14, p. 13). Plaintiff's Response again fails to offer facts regarding this issue, only stating "[t]he facts alleged . . . are the facts Plaintiff intends to prove at trial." (Pl.'s Resp. to Rhodes' Mot. to Dismiss, Dkt.

No. 24, p. 23). This is not sufficient, but because the claim is dismissed without prejudice, the defects can be cured upon refiling with the state court.

V - Whether Plaintiff May Recover Punitive Damages

Plaintiff requests punitive damages for each claim for relief. In his Response, Plaintiff concedes all arguments except that he may recover punitive damages against Defendant Rhodes under the Bosh theory of recovery. The Bosh claim is dismissed without prejudice, so the arguments regarding punitive damages are moot. *Supra* Part III.

CONCLUSION

Accordingly, Defendant Rhodes' Partial Motion to Dismiss (Dkt. No. 18) is GRANTED in part and DENIED in part. Defendant Mullett's Partial Motion to Dismiss (Dkt. No. 16) is GRANTED in part and DENIED in part. The remaining claims include (1) denial of medical care pursuant to federal law against Defendant Rhodes in his official and individual capacities and against Defendant Mullett in his individual capacity, and (2) failure to train against Defendant Rhodes in his official capacity. The Oklahoma constitutional law and Bosh claims as to Defendant Rhodes in his official capacity and the negligence claims as to both Defendants in their individual capacities are dismissed without prejudice to their refiling. All other claims against Defendant Mullett and Defendant Rhodes are dismissed with prejudice. Each party shall bear their own fees and costs.

IT IS SO ORDERED this 23rd day of December, 2016.

ROBIN J. CAUTHRON
United States District Judge